# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45917

W. MARCUS W. NYE, an individual, )
)
    Plaintiff-Respondent, )
) **Boise, April 2019 Term**
v. )
) **Opinion filed: August 26, 2019**
TOM KATSILOMETES, an individual, )
) **Karel A. Lehrman, Clerk**
    Defendant-Appellant. )

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

The judgment of the district court is <u>reversed and the award of costs, attorney fees, and prejudgment interest to Nye is vacated.</u>

J. Kahle Becker, Boise, for appellant. J. Kahle Becker argued.

Ruchti & Beck Law Offices, Pocatello, for respondent. James D. Ruchti argued.

---

MOELLER, Justice.

## I.    NATURE OF THE CASE

In an appeal arising out of Bannock County, Tom Katsilometes challenges the Idaho Senate's order granting over $18,000 in attorney fees to Senator W. Marcus W. Nye, awarded after Nye prevailed against Katsilometes in a contest over the results of the 2016 general election. The Senate confirmed Nye's election and awarded him costs and attorney fees. Because Katsilometes refused to pay the attorney fees, Nye brought an action in district court seeking a declaratory judgment ordering Katsilometes to pay him the amount ordered by the Senate. The district court granted the declaratory judgment and further awarded Nye costs, attorney fees, and prejudgment interest. For the reasons stated below, we reverse the district court's judgment upholding the Senate's award of attorney fees, and vacate the award of costs, attorney fees, and prejudgment interest.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Nye and Katsilometes were opponents in the 2016 general election for the Idaho Senate seat in District 29. After Nye defeated Katsilometes in the election, Katsilometes challenged the election results by filing a Verified Complaint for Contest of Election with the Idaho Senate. The basis for the contest was Katsilometes' allegation that Nye had violated a provision of Idaho Code section 67-6603, one of the so-called "Sunshine Laws" that regulate election campaign contributions and expenditures. In response, the President *Pro Tempore* of the Senate issued an order entitled "Procedural Order for Contest of Election," outlining the course of proceedings and referring the matter to the Senate State Affairs Committee.

Following hearings before the State Affairs Committee on January 16 and January 23, 2017, the Committee presented its findings to the Senate as a whole on January 24, 2017. The Senate voted on January 25, 2017, to adopt the Committee's recommendations that the Senate uphold Nye's election and order Katsilometes to pay Nye's witness fees and costs of discovery. Additionally, the Senate Journal reflects that the Senate separately approved a motion adopting the recommendations and findings[1] of the Committee that (1) Katsilometes' petition contesting the election was "brought and pursued frivolously, unreasonably, and without factual or legal foundation" and (2) Katsilometes be ordered to pay attorney fees in the amount of $18,060.00. In so ordering, the Senate cited Article III, section 9 of the Idaho Constitution as its authority.

Katsilometes paid Nye the amount owed for the witness fees and discovery costs but did not pay the amount owed for the attorney fees. Subsequently, to assist him in collecting on the Senate's attorney fees order, Nye brought an action in district court seeking a declaratory judgment ordering Katsilometes to pay the attorney fees that had been awarded by the Senate. Following cross motions for summary judgment, the district court granted Nye's motion for summary judgment on the declaratory judgment action and entered judgment against Katsilometes for the $18,060.00 in attorney fees the Senate had awarded Nye. In so doing, the district court determined the Senate was acting within its authority pursuant to Article III, section 9 of the Idaho Constitution when it awarded Nye his attorney fees following Katsilometes' failed

---

[1] Other than a conclusory statement noted in the Senate Journal, there were no actual written findings in the record on appeal outlining the State Affairs Committee's factual findings supporting their conclusion that the contest was pursued "frivolously, unreasonably, and without factual or legal foundation." In a judicial proceeding, an award of attorney fees under Idaho Code section 12-121 requires that such a finding "must be in writing and include the basis and reasons for the award."

election contest. The district court concluded that it could not intrude on such an exercise of discretion from another branch of government.

Following the district court's entry of judgment, Nye moved for an amended judgment awarding him prejudgment interest, costs, and attorney fees incurred in his declaratory judgment action. The district court granted Nye's motion and awarded costs as a matter of right, denied awarding discretionary costs, and awarded attorney fees pursuant to Idaho Code section 12-120(1). The district court also awarded prejudgment interest from the date the Senate ordered attorney fees until the date the district court entered its judgment in the case. The district court entered an amended judgment and awarded Nye a total of $35,372.28. Katsilometes timely appealed.

### III.    STANDARD OF REVIEW

"Both constitutional questions and questions of statutory interpretation are questions of law over which this Court exercises free review." *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010). When the Court considers such questions in the context of a summary judgment order, it reviews the record *de novo*, applying the familiar standards set forth in I.R.C.P. 56:

> [T]he standard of review for this Court is the same standard used by the district court in ruling on the motion. The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law. If the evidence reveals no genuine issue as to any material fact, then all that remains is a question of law over which this Court exercises free review.

*Lee v. Willow Creek Ranch Estates No. 2 Subdivision Homeowners' Ass'n, Inc.*, 164 Idaho 396, ___, 431 P.3d 4, 7 (2018) (internal citations and quotations omitted). Because the facts in this case are largely undisputed, this case solely presents a question of law.

"An award of attorney fees and costs is within the discretion of the trial court and subject to an abuse of discretion standard of review." *Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016) (quoting *Smith v. Mitton*, 140 Idaho 893, 901, 104 P.3d 367, 375 (2004)).

> When this Court reviews whether a trial court has abused its discretion, the four-part inquiry is "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason."

3

*Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, ___, 434 P.3d 1275, 1281 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 864, 421 P.3d 187, 194 (2018)).

## IV.    ANALYSIS

The election contest at the center of this controversy concerns a disputed Senate seat following a general election. It is only the second such contest in Idaho's history. In addition, in 129 years of legislative history since statehood, the Senate has never before awarded attorney fees against a private citizen contesting the results of an election on the grounds that the contest was frivolous. Thus, in addition to the important constitutional principles at stake here, this case presents an issue of first impression for the Court.

**A. The Idaho Senate did not have authority to award attorney fees to Nye at the time of this election contest.**

The primary issue before us is not whether the amount of attorney fees awarded to Nye was unreasonable, but whether the Senate had authority under the Idaho Constitution to award Nye any attorney fees at all. Katsilometes argues that the Senate did not have authority under Article III, section 9 of the Idaho Constitution to award attorney fees to Nye, regardless of the Senate's finding that the Contest of Election was "brought and pursued frivolously, unreasonably, and without factual or legal foundation."[2] Accordingly, he argues that the district court erred when it determined the Senate had such authority and entered a declaratory judgment against him. For the reasons discussed below, we agree that the Senate did not have the authority to award attorney fees to Nye in January 2017 and, therefore, the district court erred when it entered a declaratory judgment against Katsilometes.

As this Court examines the constitutional authority vested in a co-equal branch of the government—in this case, the legislative branch—we are respectfully mindful that this dispute involves the interplay of the bedrock principles of separation of powers and checks and balances enshrined in the Idaho Constitution. Article II, section 1 of the Idaho Constitution provides that:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of

---

[2] The Senate appears to have applied the standard from Idaho Rule of Civil Procedure 54(e)(1), which provides that "the court" may award attorney fees when a case is "brought, pursued or defended frivolously, unreasonably or without foundation." This judicial rule of procedure is expressly applicable only to the courts. Although the legislature later included this language in the current version of Idaho Code section 12-121 (approved and effective March 1, 2017), it did not exist in that statute as worded on January 25, 2017. Additionally, as will be discussed later in this opinion, the revised statute for election contests now incorporates a similar standard for imposing attorney fees. *See* I.C. § 34-2118(3)(a) ("Attorney's fees may be awarded against the contestor if the legislature determines the contest of election is frivolous and has no foundation in law or fact.") (effective July 1, 2017).

4

persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

"The separation of powers doctrine embodies the concept that the three branches of government, legislative, executive and judicial, should remain separate and distinct so that each is able to operate independently." *Sweeney v. Otter*, 119 Idaho 135, 139, 804 P.2d 308, 312 (1990). "The separation of powers doctrine prohibits 'judicial review of the discretionary acts of other branches of government.' " *Tucker v. State*, 162 Idaho 11, 28, 394 P.3d 54, 71 (2017) (quoting *In re SRBA Case No. 39576*, 128 Idaho 246, 261, 912 P.2d 614, 629 (1995)). "The question is whether this Court, by entertaining review of a particular matter, would be substituting its judgment for that of another coordinate branch of government, when the matter was one properly entrusted to that other branch." *Id.* (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 639, 778 P.2d 757, 761 (1989)).

As an initial matter, we acknowledge that the dissent does not believe that "the Senate's decision to award fees was so egregious as to convert a non-justiciable question into a justiciable one." The district court recognized that "[i]n order to reach a decision in a declaratory action, a court must determine whether a justiciable controversy exists . . . ." Thus, if the majority were to agree with the dissent that this case presents a non-justiciable controversy, the necessary outcome would be to vacate the district court's judgment granting declaratory relief, effectively nullifying the Senate's award of attorney fees to Nye. Yet, the dissent does not advocate for such an outcome. Instead, it describes the declaratory judgment in favor of Nye "as a perfunctory enforcement mechanism which perfected the Senate's award." The dissent cannot have it both ways–this case either presents a justiciable controversy that the courts can address, or it does not.

Neither side has argued that this case presents a nonjusticiable controversy. The Idaho Declaratory Judgment Act recognizes that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. I.C. § 10-1201. As the district court correctly noted, in considering "whether to grant a declaratory judgment, the criteria is whether it will clarify and settle the legal relations at issue, and whether such declaration will afford a leave from uncertainty and controversy giving rise to the proceeding." *Sweeney v. Am. Nat'l Bk.*, 62 Idaho 544, 115 P.2d 109 (1941). Because we believe that addressing this case will be helpful in clarifying the extent of the

5

constitutional authority granted to the legislative branch under its plenary powers, we affirm the district court's decision to take up this matter.

Further, we note that by deciding this matter, the Court is not meddling in the affairs of the Senate—this case was brought to the district court by a member of the Senate invoking the judicial branch's power to impose an enforceable attorney fee award. As Nye aptly recognized, absent a judicial decree, the Senate's imposition of attorney fees against Katsilometes was essentially meaningless. Where, as here, a judgment of the judicial branch is required to create an enforceable obligation, we believe that a justiciable controversy exists.

The Senate cited Article III, section 9 of the Idaho Constitution as its authority for awarding Nye his attorney fees following Katsilometes' failed Contest of Election. The relevant portion of this constitutional provision provides: "Each house when assembled shall choose its own officers; *judge of the election, qualifications and returns of its own members*, *determine its own rules of proceeding*, and sit upon its own adjournments . . . ." Idaho Const. art. III, § 9 (emphasis added). The parties disagree on the interpretation of this language. Nye contends that this provision grants the Senate broad discretion as to the rules and procedure in a Contest of Election, including the imposition of attorney fees. Katsilometes acknowledges the Senate's broad authority granted to it by the Idaho Constitution, but contends that the provision does not allow the Senate to award attorney fees against him. Instead, he asserts that the Senate is bound by a statute it enacted concerning monetary awards in contested general elections—Idaho Code section 34-2120—which, prior to its amendment in 2017, only provided for an award of costs and witness fees.

The version of Idaho Code section 34-2120 in place at the time Katsilometes filed his Contest of Election stated as follows:

Security for costs—Assessment of costs.

(a) The contestant shall file with the secretary of state a bond in the amount of five hundred dollars ($500) conditioned to pay the contestee's *costs* in case the election be confirmed by the legislature.

(b) The contestants are liable for *witness fees and the costs of discovery* made by them respectively. If the election is upheld by the legislature, the legislature may assess *costs* against the contestant. If the election is annulled by the legislature, the legislature may assess *costs* against the contestee.

. . . .

6

Ch. 209, § 28, 1982 Idaho Sess. Laws 580 (emphasis added). In July 2017, approximately six months after Katsilometes contested Nye's election, the entirety of Chapter 21, Title 34 of the Idaho Code was repealed and replaced with new statutes containing much of the same language. *See* Ch. 293, § 2, 2017 Idaho Sess. Laws 774. However, the section relating to costs was rewritten to expressly allow for an award of attorney fees. *Id.* It now reads as follows:

> Security for costs—Assessment of costs and fees—Assessment of attorney's fees
>
> (1) The contestor must file with the secretary of state a bond in the amount of one thousand dollars ($1,000) conditioned to pay the contestee's costs if the election be confirmed by the legislature.
>
> (2) The parties are liable for witness fees and the costs of discovery made by them respectively. If the election is upheld by the legislature, the legislature may assess costs and fees, *other than attorney's fees*, against the contestor. If the election is annulled by the legislature, the legislature may assess costs and fees, *other than attorney's fees*, against the contestee.
>
> (3) Attorney's fees.
> > (a) *Attorney's fees* may be awarded against the contestor if the legislature determines the contest of election is frivolous and has no foundation in law or fact.
> > (b) *Attorney's fees* may be awarded against the contestee if the election is annulled by the legislature due to misconduct, fraud or corruption on the part of the contestee.
>
> . . . .

I.C. § 34-2118 (emphasis added). Thus, the revision that occurred in 2017 changed the statute to provide for attorney fees in cases where, as here, the Senate determines that the "contest of election is frivolous and has no foundation in law or fact." Thus, Katsilometes argues that this change evinces that the Senate implicitly recognized it was without authority to award attorney fees at the time of his election contest.

Katsilometes further contends that this Court's decision in *Noble v. Ada County Elections Board*, 135 Idaho 495, 20 P.3d 679 (2000), is dispositive of the attorney fee issue. In *Noble*, the losing candidate in a primary election filed a Motion to Contest an Election in district court. *Id.* at 497, 20 P.3d at 681. After the district court upheld the election results, Noble appealed to this Court. *Id.* at 498, 20 P.3d at 682. As to attorney fees on appeal, the statute at issue provided that "[t]he appellant shall file a bond sufficient to cover the cost of appeal of a primary contest." *Id.* at 504, 20 P.3d at 688 (quoting I.C. § 34-2130 (repealed)). Interpreting that same provision, this Court stated: "This statute is not a basis for awarding attorney fees . . . ." *Id.* As we explained:

7

> The general rule is that costs do not include attorney fees unless attorney fees are expressly included in the definition of the term costs. The legislature's awareness of this rule is demonstrated by its authorization of awards of costs and attorney fees. When the legislature has intended that the term costs cover attorney fees, it has so provided. Therefore, we hold that attorney fees are not appropriately awarded under I.C. § 34-2130.

*Id.* (citations omitted). Although *Noble* concerned whether the Supreme Court could award attorney fees on appeal after a primary election contest was filed in the district court, our explanation of whether attorney fees could be awarded under the statute at issue there applies equally to the statute in this case, which is also located in Chapter 21, Title 34 of the Idaho Code.

As noted, the Senate has the constitutional authority to be the "judge of the election, qualifications and returns of its own members" and to "determine its own rules of proceeding . . . ." Idaho Const. art. III, § 9. Thus, the Senate had constitutional authority to preside over the Contest of Election and determine the rules of proceeding applicable thereto. Pursuant to this authority, the legislature enacted Idaho Code section 34-2120. As discussed, that statute explicitly provided for an award of costs but not attorney fees. That the legislature later clarified Chapter 21 of Title 34, only months after Katsilometes' challenge, to provide for an award of attorney fees strongly suggests that it recognized it had not provided itself with authority to do so under the version of Idaho Code section 34-2120 in place at the time of this election contest. *See Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 159 Idaho 84, 89, 356 P.3d 377, 382 (2015) ("It is the long standing rule in this state that when the legislature amends a statute it is deemed, absent an express indication to the contrary, to be indicative of *changed legislative intent.*") (quoting *Nebeker v. Piper Aircraft Corp.*, 113 Idaho 609, 614, 747 P.2d 18, 23 (1987))); *see also Lincoln Cnty. v. Fid. & Deposit Co. of Maryland*, 102 Idaho 489, 491, 632 P.2d 678, 680 (1981) ("When a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded to it before the amendment.").

Nothing we say here should be read to cast doubt on the Senate's constitutional authority to enact its own rules of proceeding in the event of an election contest. We are not intervening in the Senate's constitutionally-delegated powers or even in its power to define its own rules by statute. Rather, we merely recognize that where the Senate enacts a law or a rule which does not permit it to impose attorney fees in an election contest, it cannot do so on an *ad hoc* basis.

Although our conclusion regarding the effect of the previous version of Idaho Code section 34-2120 is dispositive of this case, we briefly address Katsilometes' additional argument

8

that "[t]he statutory scheme in place at the time this election contest was initiated and decided defined the substantive rights of the parties which could be impacted by an adverse decision by one house of the legislature." This assertion implicates important due process concerns. As to such matters of constitutional importance, we have previously held:

> A procedural due process inquiry is focused on determining whether the procedure employed is fair. The due process clause of the Fourteenth Amendment prohibits deprivation of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency and fair play. Procedural due process is the aspect of due process relating to the minimal requirements of notice and a hearing if the deprivation of a significant life, liberty, or property interest may occur. A deprivation of property encompasses claims where there is a legitimate claim or entitlement to the asserted benefit under either state or federal law. The minimal requirements are that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard. The opportunity to be heard must occur at a meaningful time and in a meaningful manner in order to satisfy the due process requirement.

*Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001) (internal citations and quotations omitted).

The Procedural Order for Contest of Election issued by the Senate and sent to Katsilometes indicated that the Senate would be performing its constitutional duty pursuant to Article III, section 9 to "judge of the election, qualifications and returns of its own members" and that "[n]othing in this Procedural Order limits or restricts the Senate in the performance of its duties as the judge of the election, qualifications and returns of its own members." However, as noted, although the Idaho Constitution allows the Senate to determine the rules of its own proceedings, the Senate already did so when it enacted Idaho Code section 34-2120, a statute that did not provide the Senate with the power to impose attorney fees in a general election contest. The ordering of attorney fees against a private citizen on an *ad hoc* basis, without prior notice, raises significant due process concerns.[3] Conversely, the Senate had notice of our decision in *Noble*—which concerned a similar provision in Chapter 21, Title 34 of the Idaho Code—for more than ten years before it imposed attorney fees against Katsilometes under a statute that did not expressly provide for them. We also recognize that, as counsel for Katsilometes averred

---

[3] We are mindful, as the dissent has properly noted, that Katsilometes asked for attorney fees when he filed his contest of the election in the Senate. However, the mere fact that a party seeks an impermissible form of relief from a tribunal does not imbue that body with the legal authority to grant such relief.

9

during oral argument, there is no case law over the last 250 years in the United States affirming that a legislative body, through its plenary powers, can impose attorney fees against an individual who is not a member of the legislative body without a statutory basis.

Again, as we have approached this dispute, we have strived to honor the doctrine of separation of powers and respect the constitutional role of the legislature—a co-equal branch of our government. Therefore, we have not attempted to define or limit the Senate's constitutional authority and discretion in determining its internal "rules of proceeding" and regulating the conduct of "members" of the Senate. Idaho Const. art. III, § 9. It is unnecessary for us to do so here because in adopting the earlier version of Idaho Code section 34-2120, the Senate defined and limited its own power to impose such fees. In essence, we are merely holding that the Senate, as part of a bicameral legislative body, cannot ignore laws duly passed by both chambers of the legislature and impose attorney fees against a private citizen on an *ad hoc* basis.

In conclusion, it is important to recognize that at its core, this case does not concern a rule of the Senate; rather, it concerns the Rule of Law. Contrary to the hyperbolic assertion of the dissent, this is hardly an attempt by the judiciary to "muscle" itself into the affairs of the Senate. Indeed, this action was initiated by a member of the Senate seeking judicial assistance in enforcing a decision of the Senate. This Court is merely responding to a case that has been brought before it—and fulfilling its constitutional role—by applying well-settled legal principles to an unsettled question of law. This is a judicial function almost as old as our republic. Indeed, as Justice John Marshall observed, in perhaps the most notable appellate ruling in the last 230 years: "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). In short, this Court is merely holding that the Senate, notwithstanding the provisions of Article III, section 9 of the Idaho Constitution, is subject to the very laws it enacts. This is entirely consistent with another renowned statement by Justice Marshall contained in *Marbury v. Madison*: "The government of the United States has been emphatically termed a government of laws, and not of men." *Id.* at 163. Accordingly, we respectfully hold that the Senate's award of attorney fees to Nye was improper.

**B. Nye was not entitled to recover his litigation costs, attorney fees, and prejudgment interest in the district court action.**

Following the district court's entry of the declaratory judgment, Nye sought an award of his litigation costs, attorney fees, and prejudgment interest for bringing his action in the district court. The district court awarded Nye, as the prevailing party, attorney fees under Idaho Code

10

section 12-120(1) and costs as a matter of right pursuant to Idaho Rule of Civil Procedure 54(d)(1)(A); however, no discretionary fees were awarded. Additionally, the district court awarded Nye prejudgment interest on the Senate's attorney fee award.

In light of this opinion, Nye should not have been the prevailing party in the district court action. Therefore, the district court's award of costs, attorney fees, and prejudgment interest must be vacated.

### C. Neither side is entitled to attorney fees on appeal.

Katsilometes requests attorney fees on appeal pursuant to Idaho Code section 12-120(1) and Idaho Appellate Rules 40 and 41. Katsilometes further seeks an opportunity on remand to recover his attorney fees incurred during the district court proceedings since he should have prevailed below. Nye requests attorney fees on appeal pursuant to Idaho Code sections 12-120(1) or 12-121.

Section 12-120(1) applies to claims for monetary relief in which the amount pleaded is under $35,000, and entitles the prevailing party to an award of reasonable attorney fees. Here, Nye's claim was for a declaratory judgment effectuating the Senate's award of fees. Although this is a claim for money, the gravamen of the action is a dispute concerning the legal authority of the Senate to impose attorney fees in January of 2017 under the then-existing statutory scheme. As such, this case does not arise under the circumstances contemplated by section 12-120(1). Rather, it is, at its core, a constitutional issue. As a result, Katsilometes is not entitled to attorney fees on appeal under 12-120(1), and may not seek his fees on remand. Nye did not prevail on appeal, so he is not entitled to fees on appeal, and his award of fees by the district court must be vacated.

Attorney fees under section 12-121 are only permissible "if the appeal was brought or defended frivolously, unreasonably, or without foundation." "Fees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016). Here, the parties were confronted with a difficult case of first impression, one that concerned important constitutional issues. Both sides defended their respective positions professionally, reasonably, and in good faith. Accordingly, we decline to award either side attorney fees under section 12-121.

## V.    CONCLUSION

For the reasons stated above, we reverse the district court's order enforcing the award of attorney fees to Nye pursuant to the order of the Idaho Senate, and vacate all costs, attorney fees, and prejudgment interest awarded to Nye by the district court. Neither side is entitled to attorney fees on appeal; however, as the prevailing party, Katsilometes is entitled to his costs on appeal.[4]

Justices BEVAN, STEGNER, and Justice Pro Tem KIDWELL **CONCUR.**

BURDICK, C.J., dissenting.

By striking down the Senate's award of attorney's fees, I believe the majority muscles the Judiciary into becoming a second judge in a proceeding where the Constitution requires the Legislature to sit as the sole arbiter. *See Burge v. Tibor*, 88 Idaho 149, 154, 397 P.2d 235, 237 (1964). In my view, the Senate's power to assess attorney's fees is well within its constitutionally granted power to adjudicate election contests. I also believe Katsilometes's due-process rights were adequately protected because he brought himself within the jurisdiction of the Senate and asked for attorney's fees in his petition. For these reasons, I respectfully dissent.

1. The Senate's award of attorney's fees was within its broad constitutional power to judge election contests and is consistent with Idaho Code section 34-2120.

The separation-of-powers doctrine prohibits "judicial review of the discretionary acts of other branches of government." *In re SRBA Case No. 39576*, 128 Idaho 246, 261, 912 P.2d 614, 629 (1995). While the Idaho Constitution confers the power to adjudicate almost all matters in controversy to the Judiciary, it gives the exclusive power to adjudicate general-election contests to each house of the Legislature. Idaho Const. art. III, § 6; *Burge*, 88 Idaho at 154, 397 P.2d at 237 ("This provision makes each house of the legislature *the sole judge* of the election and qualification of its members.") (emphasis added); *Beitelspacher v. Risch*, 105 Idaho 605, 606, 671 P.2d 1068, 1069 (1983) ("Art. 3, § 9, of our Constitution gives each house of the legislature the power to determine its own rules of proceeding. Thus, this power is specifically reserved to the legislative branch by the Constitution, and we cannot interfere with that power.").

---

[4] Although Katsilometes asked for a remand so that he could be awarded attorney fees below, he did not ask for a remand on the issue of costs.

12

In my view, Article III, Section 9 is a "textually demonstrable constitutional commitment" which assigns election contests to the Legislature and implicates its discretionary authority. *Tucker v. State*, 162 Idaho 11, 29, 394 P.3d 54, 72 (2017). This Court is "bound to respect the reasonable exercise by the legislature of powers expressly delegated to it by the constitution of this state, and in the absence of other constitutional offense cannot interfere with it." *Idaho State AFL-CIO v. Leroy*, 110 Idaho 691, 696, 718 P.2d 1129, 1134 (1986); *see also Barry v. U.S. ex rel. Cunningham*, 279 U.S. 597, 620, (1929) ("Here the question under consideration concerns the exercise by the Senate of an indubitable power; and if judicial interference can be successfully invoked, i[t] can only be upon a clear showing of such arbitrary and improvident use of the power as will constitute a denial of due process of law.").

I do not think the Senate's decision to award attorney's fees was so egregious as to convert a non-justiciable question into a justiciable one. First, I do not infer from section 34-2120's repeal and replacement that the Senate lacked the power to award attorney's fees under the predecessor statute. That the new enactment clarified that attorney's fees may be awarded does not alter the Senate's underlying constitutional power to assess them in the first place. The award of attorney's fees serves the same purpose as the bond requirement and assessment of court costs under the same statute. These measures ensure the swift and proper resolution of an election by deterring unfounded attacks on election results which might undermine or unreasonably delay them.

In addition, because election contests are a constitutionally distinct species of adjudication, the Senate may choose to interpret the applicable statutes as it sees fit so long as the interpretation is reasonable. Here, the Senate did not craft the award out of whole cloth. At the hearing, both the Attorney General's Office and the Senate signaled their understanding that attorney's fees were awardable as "costs" under Idaho Code section 34-2120. That this Court has imposed a limiting construction on "costs" to exclude attorney's fees is persuasive to the Senate tribunal, but not binding. *See Burge*, 88 Idaho at 154, 397 P.2d at 237 (stating that this Court's decision denying a writ of mandamus to compel the counting of absentee ballots under Idaho Code §§ 34-1105–1109 was "not binding" on the Legislature but "may be considered . . . for what weight or effect the senate may see fit to give it, in the final determination of the election . . . should a proceeding for that purpose be initiated . . . .").

13

The majority's reasoning that the Senate "cannot ignore laws duly passed by both chambers of the legislature" subverts the plain words of the Idaho Constitution. Section 9 provides that "each house" acts with autonomy; the power is not subject to bicameral or Executive approval. The Legislature cannot diminish a constitutional power by statutory fiat just as one session of the Legislature cannot tie the hands of the Senate in a future session by rewriting the scope of its power. *See Johnson v. Diefendorf*, 56 Idaho 620, 57 P.2d 1068, 1075 (1936) ("A legislative session is not competent to deprive future sessions of power conferred on them, or reserved to them, by the constitution."). Likewise, the language in *Noble* relied on by the majority has no application to the present case because that decision that involved a primary-election contest, rather than a general election. *Noble v. Ada Cty. Elections Bd.*, 135 Idaho 495, 497, 20 P.3d 679, 681 (2000). This is *not* a distinction without a difference—primary contests are determined in the district court, rather than the Senate, and their jurisdiction is statutory, rather than Constitutional. *Compare* I.C. § 34-2123 *with* I.C. § 34-2105; Idaho Const. art. III, § 9. So when the majority notes that the Legislature is aware that the courts interpret "costs" to exclude attorney's fees, this has no bearing on whether the Legislature intended "costs" to exclude attorney's fees when the forum charges each house with interpreting the statute. Interpreting "costs" to include attorney's fees is not so unreasonable an interpretation to require this Court's intrusion into the Senate's adjudication. *See* Black's Law Dictionary 423 (10th ed. 2014) (defining "legal costs" as "[a]ttorney's fees and other expenditures related to a lawsuit.").

2. The Senate's award of attorney's fees did not violate Katsilometes's due-process rights.

Because section 34-2120 only stated "costs," the majority characterizes the Senate's award of attorney's fees as an ad hoc assessment of fees against private citizens without prior notice. I cannot view this case through such a broad lens and believe that Katsilometes received procedural due process under the circumstances.

The Legislature must still comply with procedural due process even when it is acting within its constitutional power. *Cf. In re SRBA Case No. 39576*, 128 Idaho 246, 255, 912 P.2d 614, 623 (1995). The due-process requirement "is met when the defendant is provided with notice and an opportunity to be heard." *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001) (quoting *Aberdeen–Springfield Canal Co.*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999)). It must be remembered that due process "is not a concept to be applied rigidly

14

in every matter." *Id.* Rather, it is "a flexible concept calling for such procedural protections as are warranted by the particular situation." *Id.*

We should not lose sight of the fact that neither the Senate, nor Nye, instigated the election contest. Katsilometes filed the petition. Katsilometes voluntarily submitted himself to the Senate's jurisdiction and its Section 9 powers. Katsilometes was aware that this was a unique judicial proceeding subject to special rules. Katsilometes specifically asked for attorney's fees in his petition. And Katsilometes was provided "with notice and an opportunity to be heard" when the Senate gave him the procedural order and a hearing. *Bradbury*, 136 Idaho at 72, 28 P.3d at 1015. The Senate informed Katsilometes that it would operate under Article III, section 9 and that the procedural order did not "limit[] or restrict[]" the performance of that duty. Katsilometes persisted in his claim and received a hearing. Katsilometes submitted a brief and was given time to present his case. As mentioned, the Attorney General's Office gave a summary of the governing law and stated that attorney's fees were a matter of discretion and the Senate could determine how to interpret "costs" in the statute. If the Attorney General's Office was able to research and come to this conclusion, then Katsilometes either failed to research this fact or simply disagreed with it. Either way, Katsilometes had notice that assessment of attorney's fees was a possibility.

Given these considerations, I cannot say that the Senate "arbitrarily deprived" Katsilometes of his rights by failing to meet the "minimal requirements" of procedural due process when it awarded attorney's fees against him. *Bradbury*, 136 Idaho at 72, 28 P.3d at 1015.