# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46350

JEFF GOOD,

    Plaintiff-Respondent,

v.

HARRY'S DAIRY, LLC, an Idaho limited liability company,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2020 Term

Opinion Filed: April 13, 2020

Karel A. Lehrman, Clerk

**<u>SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED MARCH 9, 2020 IS HEREBY WITHDRAWN.</u>**

Appeal from the District Court of the Third Judicial District of the State of Idaho, Owyhee County. Thomas J. Ryan, District Judge.

The decision of the district court to grant summary judgment is <u>reversed</u>, the judgment on the jury verdict is <u>vacated</u>, and the case is <u>remanded</u>.

Givens Pursley, LLP, Boise, for appellant. Bradley Dixon argued.

Dinius Law, Nampa, for respondent. Kevin Dinius argued.

———————————

BRODY, Justice.

This appeal arises from a dispute over a contract to purchase hay. Jeff Good and Harry's Dairy entered into a contract providing that Harry's Dairy would purchase 3,000 tons of Good's hay. Harry's Dairy paid for and hauled approximately 1,000 tons of hay over a period of approximately eight weeks, but did not always pay for the hay before hauling it and at one point went several weeks without hauling hay. After Harry's Dairy went a month without hauling additional hay, Good demanded that Harry's Dairy begin paying for and hauling the remaining hay. Harry's Dairy responded that it had encountered mold in some of the hay, but would be willing to pay for and haul non-moldy hay at the contract price. Good then sold the remaining hay for a substantially lower price than he would have received under the contract and filed a complaint against Harry's Dairy alleging breach of contract. Harry's Dairy counterclaimed for violation of implied and express warranties and breach of contract. The district court granted summary judgment in favor of Good on all claims, and a jury ultimately awarded Good $144,000

1

in damages. Harry's Dairy appealed, arguing that there were several genuine issues of material fact precluding summary judgment, that the jury verdict was not supported by substantial and competent evidence, and that the district court erred in awarding attorney fees, costs, and prejudgment interest to Good. We reverse, in part, the district court's orders on summary judgment; we therefore vacate the judgment and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Good is a hay farmer based in Melba, Idaho. Harry's Dairy is a dairy operation that is owned by Harry DeHaan and has dairies in Wendell and Buhl, Idaho. During the time period at issue, Jennifer and Trent Cummins, DeHaan's daughter and son-in-law, operated a company called Hay Now. Hay Now's business included finding dairy quality hay for Harry's Dairy.

In early October of 2015, Jennifer Cummins learned that Good had hay for sale. Good informed her that he was selling 2014 and 2015 hay, and that she had to buy the 2014 hay in order to buy the 2015 hay. The Cumminses stated that they were concerned that the 2014 hay might be weather damaged, but that Good said "there had been very little weather incidents in Melba over the past year and, thus, the hay had not been exposed to weather that would result in damage." Jennifer Cummins tested the hay for nutritional value. She took at least six samples from around each side of every stack, and Good did not restrict her ability to inspect or test the hay. However, because the bales were tightly stacked together, she was only able to visually inspect the outside of the stacks.

Jennifer Cummins acknowledged that she saw that the hay was not tarped, that most of the stacks were significantly sun bleached, and that some had weather damage on the top of the bales. However, she did not test for mold because of Good's representation about the past year's weather and because the industry custom is that the farmer retains or accepts return of any moldy hay that is found. Additionally, she testified that weather damage on top of the bales is expected, especially if the hay has been sitting outside for an extended period of time.

In December 2015, DeHaan, on behalf of Harry's Dairy, LLC, entered into an agreement with Good to buy 3,000 tons of hay. DeHaan, with the assistance of Jennifer Cummins, drafted a letter to Good memorializing their agreement ("the December 11 letter" or "the contract"). It read as follows:

Dear Jeff:

This letter agreement is intended to memorialize the agreement that my dairy

operation, Harry's Dairy, LLC., made with you to purchase your 2014 and 2015 hay crops. If you do not agree with any of the below, please contact me at the above to discuss. If I do not hear from you, I will assume you agree to all of the following:

In October and early November, 2015, with your gracious help, the limited liability company through which Harry's Dairy, LLC, exclusively purchases hay – Hay Now, LLC. – took tests of your 2014 and 2015 hay crops. Your hay that Hay Now tested was the hay located at the farm-shop and in the field next to the farmhouse at your farming operation, Highway 78, Melba, Idaho. This is roughly 3,000 tons of hay.

Based on the results of those tests, we negotiated with you to purchase your hay. The agreed upon amount is $128/ton at the stack. Freight and freight rates will be handled separately through Russell Dygert. Russell will be in charge of all freight. We agreed to pay you in third's [sic]. We agreed that the hay we haul at any given time will be our decision.

As you know, the last half of 2015 has been especially difficult for the dairy business. Milk prices have taken a serious hit from their previous highs. I make an effort to run my dairy with as little debt from the bank as possible. But this means, since we talked, with the lower milk prices my cash flow has gotten tighter and I have to be extra disciplined. I have to spread the money out a little further, which means I need to pay you in smaller, but more frequent installments. That's why this enclosed check is for $25,000. We really like your hay and want to build a relationship with you so we can work together in the future. We think a big part of running a successful dairy is having good relationships with our vendors. We won't haul any hay we don't pay for and we hope this new arrangement will also work for you. If you have questions or concerns, please give me, Trent, or Jennifer a call.

Very truly yours,

Harry DeHaan

Good never contacted DeHaan to disagree with the terms or recitation of facts in the letter.

Jennifer Cummins coordinated with a trucking business to transport the hay from Good's farm to Harry's Dairy. Harry's Dairy returned the December 29, 2015 load because it asserted that it contained moldy hay. Good testified that he agreed to take that load back and credit Harry's Dairy for the cost of the load, even though he did not believe the load contained mold, because he was trying to be polite. Harry's Dairy did not test the load for mold before returning it.

On December 31, 2015, Jennifer Cummins went to Good's farm to inspect the hay shipments as they were being loaded in order to avoid loading any more moldy hay. She asserted that she told Good that Harry's Dairy was concerned about mold in his hay, and that Good told

her that he uses a "50/50 rule"—he puts 50% "good bales" and 50% "top and bottom" bales on the truck. She further testified that she told Good that moldy hay would only end up being returned. Good denies discussing a "50/50" rule with Jennifer Cummins.

Harry's Dairy hauled twenty-two loads of hay, totaling 726.5 tons, between December 17, 2015, and January 27, 2016. Harry's Dairy admitted that it did not always pay for each load prior to shipping. Although Harry's Dairy did not return any additional loads during this time period, Jennifer Cummins testified that they continued to encounter mold in the hay they accepted, but simply attempted to use what they could. To compensate for the moldy hay, Harry's Dairy bought hay from other sources at higher prices.

After January 27, 2016, Harry's Dairy did not haul hay again until early March, when it prepaid for and hauled an additional five loads of hay. DeHaan testified that one of these five loads was rejected, but it was not returned because Good refused to cover the cost of transporting it back to his farm. However, DeHaan did not have this conversation with Good directly; he thought he talked to Jennifer Cummins about it and she talked to Good. DeHaan did not testify as to when this conversation took place. The five March loads were the last time that Harry's Dairy hauled hay from Good. In total, Harry's Dairy paid for and hauled approximately 1,000 tons of hay.

In a series of text messages sent between January and April of 2016, Vivian Good, Good's wife, repeatedly asked Jennifer Cummins when they could expect the remaining hay to be paid for and hauled. None of the text messages mentioned Harry's Dairy's concern about the quality of the hay.

On April 21, 2016, Good's attorney sent a letter to DeHaan demanding that he pay for and haul the remaining hay (the "demand letter"). DeHaan replied with an April 26 email and April 28 letter in which he stated that he was willing to take dairy quality hay but not moldy or damaged hay. He added that some of the hay they had hauled up to that point contained mold, but they had tried to accommodate by sending some back and mixing some with better hay. He suggested that a third party pick out satisfactory hay at Good's farm in order to avoid "hard feelings" and the cost of transporting unsatisfactory hay to and from Good's farm.

DeHaan testified that he went to Good's farm on April 26, 2016, to try to resolve the mold issue. He took photographs of the hay he saw there, as well as of a stack of moldy hay at the Wendell dairy that allegedly came from Good. Harry's Dairy's nutritionist tested the Wendell

4

dairy stack for mold, and the test results showed high levels of mold. Good denied that the moldy stack came from his farm. He explained that the hay bales depicted in the photographs measure 3'x 4'x 8' but his baler only makes bales of hay measuring 4'x4'x8'.

Good's demand letter stated that if he did not hear from DeHaan and receive adequate assurance of his intent to perform, he would pursue his UCC remedy of selling the hay on the open market and recovering any difference from Harry's Dairy. Accordingly, rather than allow Harry's Dairy to pick out the hay it deemed satisfactory, Good sold the remaining 2,000 tons of hay through two hay brokers: Bob Barnes and Felix Anchustegui. The hay sold for substantially less than the price agreed upon in his contract with Harry's Dairy. Barnes testified that based on his inspection and testing of the hay, he did not have concerns about Good's hay being moldy.

Like Good, Barnes testified that the photographs of the moldy hay stack at the Wendell dairy were unlike any he had ever seen or purchased from Good, in part because the hay in the photos was baled using different color string than Good uses. However, DeHaan testified that the bales measured 4'x 4'x 8' and were baled using the same color twine that he saw at Good's farm in April of 2016. Barnes further testified that he does not test for mold, but does check for mold visually and tests hay for moisture.

Good filed a complaint in district court alleging breach of contract. Harry's Dairy filed an answer and counterclaim that included claims of violation of implied and express warranties and breach of contract. Good then filed a motion for summary judgment on all claims. The district court granted his motion on Harry's Dairy's express warranty and implied warranty of fitness for a particular purpose claims, but denied summary judgment on the implied warranty of merchantability and breach of contract claims. Subsequently, the parties filed cross motions for reconsideration. The district court denied Harry's Dairy's motion for reconsideration and granted Good's motion for reconsideration, thereby granting summary judgment to Good on all issues except for the amount of damages sustained as a result of the breach of contract. Harry's Dairy then filed a second motion for reconsideration, which the district court denied.

A jury trial was held on the issue of damages. In response to questions on a special verdict form, the jury determined that (1) Good resold the hay in good faith, (2) the resold hay was reasonably identified to the contract, and (3) Good resold the hay in a commercially reasonable manner. The jury assessed Good's damages at $144,000. The district court then entered judgment against Harry's Dairy in that amount and awarded Good costs, attorney fees,

and prejudgment interest. The district court denied Harry's Dairy's subsequent motion for new trial but reduced the judgment by $3,686.40 in order to account for thirty-two bales of hay that Harry's Dairy returned to Good in December 2016. Harry's Dairy filed a timely notice of appeal.

## II. STANDARD OF REVIEW

When reviewing a grant of summary judgment, this Court uses the same standard used by the district court. *First Sec. Corp. v. Belle Ranch, LLC*, 165 Idaho 773, 451 P.3d 446, 453 (2019). Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, show that there is no material issue of fact such that the moving party is entitled to a judgment as a matter of law. *Nye v. Katsilometes*, 165 Idaho 455, ___, 447 P.3d 903, 906-07 (2019). The moving party has the burden of proving the absence of a genuine issue of material fact. *Scout, LLC v. Truck Ins. Exch.*, 164 Idaho 593, 597, 434 P.3d 197, 201 (2019). Summary judgment should not be granted if reasonable people could reach different conclusions from the evidence. *ABK, LLC v. Mid-Century Ins*. Co., 166 Idaho 92, ___, 454 P.3d 1175, 1179 (2019). However, a mere scintilla of evidence or slight doubt as to a material fact is insufficient to create a genuine issue of material fact for purposes of summary judgment. *Id.* If the evidence reveals no genuine issues of material fact, then all that remains is a question of law over which this Court exercises free review. *Nye*, 165 Idaho at ___, 447 P.3d at 907.

## III. ANALYSIS

**A. The district court did not err in granting summary judgment to Good on the express warranty counterclaim.**

Jennifer and Trent Cummins testified that in the fall of 2015, when Trent Cummins expressed concern that weather damage in the 2014 hay may have resulted in mold, Good "represented to [him] that there had been very little weather incidents in Melba over the past years and that the hay had not been exposed to weather that would result in damage or mold to the hay." Harry's Dairy argued that this representation constituted an express warranty that the hay did not contain mold. Idaho Code section 28-2-313 provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." I.C. § 28-2-313(1)(a).

The district court granted summary judgment to Good on Harry's Dairy's express

warranty claim. It concluded that Good's statement did not rise to the level of an affirmation or promise made by Good about the quality of the hay. We agree. A statement about the weather the previous year does not rise to the level of an express warranty that the hay did not contain mold, because it was neither an "affirmation of fact" about mold nor a "promise" that the hay would not be moldy. Furthermore, Harry's Dairy acknowledges that poor weather is not the only way that hay can become moldy. For example, DeHaan testified that the only way to get mold inside the bales is to bale it wet, and that when he went to inspect the hay on Good's farm in April of 2016, Good told him that he had baled some hay wet and stacked it "radiator style" in order to allow it to dry. Therefore, it was not error for the district court to grant summary judgment on Harry's Dairy's express warranty claim.

**B. The district court did not err in granting summary judgment on the implied warranty of fitness for a particular purpose counterclaim.**

Harry's Dairy argues that Good breached an implied warranty of fitness for a particular purpose because it was relying on Good to furnish suitable hay. Unless excluded or modified, a warranty that goods will be fit for a buyer's particular purpose is implied in all sales in which the seller, at the time of contracting, has reason to know of that particular purpose and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. I.C. § 28-2-315. However, if the buyer, before entering into the contract, examined the goods as fully as he desired, no such warranty is created with regard to defects which an examination should have, under the circumstances, revealed to him. I.C. § 28-2-316(3)(b).

The district court concluded that there was no implied warranty of fitness for a particular purpose because the evidence showed that Harry's Dairy relied on Hay Now's skill and judgment regarding the suitability of the hay, not Good's. On appeal, Harry's Dairy argues that it relied on Hay Now for nutritional testing but relied on Good to provide non-moldy hay. Furthermore, Harry's Dairy argues that the implied warranty survived its pre-contract examination because it is not the industry custom to test for mold before purchasing hay.

The district court did not err in granting Good's motion for summary judgment on Harry's Dairy's implied warranty of fitness for a particular purpose claim. The evidence supports the district court's conclusion that Harry's Dairy relied on Hay Now, not Good, to procure suitable hay. For example, DeHaan testified that he considered Hay Now to be his agent for purposes of his transaction with Good. Additionally, in her statement, Jennifer Cummins

7

indicated that a condition of Hay Now's business relationship with Harry's Dairy was that the hay it obtained for Harry's Dairy "must test to a certain number by a certified testing lab *and that it must be free of mold or other weathered conditions*" (emphasis added). This statement undermines Harry's Dairy's argument that it relied only on Good, not Hay Now, to ensure that the hay was free from mold. Therefore, it was not error for the district court to grant summary judgment on Harry's Dairy's implied warranty of fitness for a particular purpose claim.

## C. The district court erred in granting summary judgment on the implied warranty of merchantability counterclaim.

Harry's Dairy argues that Good breached an implied warranty of merchantability by supplying it with moldy hay. Unless excluded or modified, a warranty that goods will be merchantable is implied in all sales in which the seller is a merchant of goods of that kind. I.C. § 28-2-314(1). However, as is the case for the implied warranty of fitness for a particular purpose, no warranty is created if the buyer examined the goods as fully as desired before entering into the contract, and an examination should have, in the circumstances, revealed the alleged defect. I.C. § 28-2-316(3)(b). In order to recover damages for breach following acceptance of goods, a buyer must notify the seller of the breach within a reasonable time after the breach was discovered or should have been discovered. I.C. § 28-2-607(3).

The district court initially denied Good's motion for summary judgment on the implied warranty of merchantability claim brought by Harry's Dairy. The district court did so because it concluded that whether Harry's Dairy's pre-contract examination of the hay excluded the implied warranty of merchantability and whether Harry's Dairy gave notice of the mold within a reasonable time were disputed issues of material fact. However, on reconsideration, the district court granted summary judgment on this claim on the grounds that Harry's Dairy was given the opportunity to inspect the hay and should have discovered mold issues if they existed. Regarding notice, the district court concluded that none of the communications during the performance of the contract showed that Harry's Dairy notified Good of mold in any accepted hay. Furthermore, the parties' "course of dealing" was established with the rejection of the December 31 load: mold was identified and returned to Good. However, this never occurred with any of the later loads that were delivered.

On appeal, Harry's Dairy again argues that the implied warranty of merchantability survived its pre-contract examination of the hay because it is not the industry standard to test for

8

mold before purchasing hay. Additionally, even if it should have tested for mold, there was a question of fact regarding whether it *could* have done so, given the size of the stacks. Regarding notice, Harry's Dairy argues that a reasonable jury could find that it gave timely notice through its rejection of the December 29 load, Jennifer Cummins' verbal communication to Good of the mold problem on December 31, the rejection of the March load, or DeHaan's responses to the April demand letter.

The district court erred in granting Good's motion for summary judgment on Harry's Dairy's implied warranty of merchantability claim because there were genuine issues of material fact as to whether Harry's Dairy (1) should have tested for mold in its pre-contract examination of the hay and (2) gave notice of the mold problem within a reasonable time.

First, Harry's Dairy presented sufficient evidence to create a genuine issue of material fact regarding whether it should have tested for mold in its pre-contract examination of the hay. Harry's Dairy submitted evidence that mold is not the kind of defect that it should have discovered. For example, both DeHaan and Jennifer Cummins testified that in the hay business, hay is not customarily tested for mold before it is purchased; rather, if mold is encountered, hay containing mold is kept by the seller while non-contaminated hay is delivered. Trent Cummins made the same assertion in his statement. Additionally, as Harry's Dairy points out, even Barnes, Good's expert witness at trial, testified that he does not test for mold. Therefore, there is at least a question of fact as to whether Harry's Dairy should have discovered any mold in the hay in its pre-contract examination. There is also a question of fact as to whether Harry's Dairy even *could* have tested for mold, given testimony by Jennifer Cummins that the hay was stacked four bales high, four bales wide, and thirty to fifty bales long.

Second, Harry's Dairy presented sufficient evidence to create a genuine issue of material fact regarding whether it gave notice of the mold within a reasonable time. Most of the events that Harry's Dairy claims could serve as notice fall short for various reasons. Harry's Dairy received a refund for the rejected December 29 load and successfully returned it to Good, so that hay was not "accepted" under Idaho Code section 28-2-607. Jennifer Cummins testified that on December 31, she told Good that moldy hay would end up being returned, but that does not amount to a statement that she had "discovered [a] breach" in any of the hay that had been accepted. *See* I.C. § 28-2-607(3)(a). DeHaan's testimony that Good was told of a moldy March load and refused to accept it back was hearsay based on what he thought Jennifer Cummins told

9

Good, and the record contains no testimony by Jennifer Cummins that she did in fact have this conversation with Good about the moldy March load.

However, a jury could find that DeHaan's responses to the April demand letter constituted timely notice. It is true that the phrase "bales I sent back because of mold" in DeHaan's letter must have been referring to the rejected December 29 load, because that is the only load that Harry's Dairy claims was successfully rejected and returned to Good's farm. However, other parts of DeHaan's letter and email could be interpreted as indicating that additional moldy loads were accepted. For example, in his letter, DeHaan wrote, "I would prefer to resolve the 2 missing loads *and return the moldy hay we still have sitting at my dairy*." (emphasis added). Likewise, in his email, DeHaan stated, "When we hauled almost a third of the hay, we got into mold problems. We sent some back, *we mixed some with better hay, and generally tried to accommodate*." (emphasis added).

Whether the time taken for an action under the UCC is reasonable "depends on the nature, purpose, and circumstances of the action." I.C. § 28-1-205(a). Thus, timeliness under UCC 2-607(3)(a), enacted in Idaho through Idaho Code section 28-2-607(3)(a), is generally a question of fact. 2 Hawkland UCC Series § 2-607:3 (Dec. 2019 Update). Depending on when the allegedly moldy hay was encountered but accepted, it is certainly possible that a jury could find DeHaan's responses to the demand letter were sent too late to qualify as effective notice. However, with the record before us, the delay was not so egregious that we can rule as a matter of law that notice was not provided within a reasonable time. The fact that the parties took certain actions with respect to the return of the December 29 load does not change this conclusion. One occurrence cannot establish a pattern of conduct. *Nettleton v. Canyon Outdoor Media, LLC*, 163 Idaho 70, 74, 408 P.3d 68, 72 (2017) (explaining that under the UCC, a course of performance or dealing is usually established through a pattern of conduct between the parties, such as repeated instances of performance or previous transactions).

Our reversal of summary judgment is not an indication that Harry's Dairy is likely to succeed at trial. The only evidence of moldy hay in the record at this time is photographs that Harry's Dairy took at its dairy. Good makes a forceful argument that the photographs show hay bales that are different in size and are wrapped in a different color twine than the bales produced by Good. Even so, summary judgment is a high threshold for the movant to overcome. Harry's Dairy has presented sufficient evidence to successfully oppose it here.

10

**D. The district court erred in awarding summary judgment to Good on his breach of contract claim.**

At oral argument, counsel for both parties agreed that a reversal of the district court's decision regarding the implied warranty of merchantability claim brought by Harry's Dairy would require a reversal of its decision regarding the breach of contract claim. We agree.

As a preliminary matter, Harry's Dairy's did not breach the contract by failing to pay off the contract in three installments of one-third each. The December 11 letter states that Harry's Dairy agreed to pay Good in thirds, but this requirement was modified through the parties' course of performance. Harry's Dairy always paid in installments smaller than $128,000, and Good never objected to this practice. Similarly, Harry's Dairy did not violate the contract terms by hauling hay more slowly than Good would have liked. The December 11 letter contained no time requirement for hauling hay. To the contrary, it states that "the hay we haul at any given time will be our decision."

Harry's Dairy's decision to stop paying for and hauling hay could be considered a breach of contract. However, if a jury determined that Good breached the implied warranty of merchantability by supplying moldy hay, then Good would have breached before Harry's Dairy stopped hauling hay. In that case, Harry's Dairy's breach of contract claim would fail, and a jury could determine that Harry's Dairy's decision to stop hauling hay was a justified cancellation of the contract under Idaho Code section 28-2-612(3); a commercially reasonable suspension of performance pending adequate assurance under Idaho Code section 28-2-609 (if the contract is determined not to be an installment contract) or Idaho Code section 28-2-612(2) (if the contract is determined to be an installment contract); or simply an acceptable delay in hauling hay because Harry's Dairy's time to inspect had not yet expired under Idaho Code section 28-2-513. Therefore, we reverse the district court's grant of summary judgment to Good on his breach of contract claim.

Because we determine that there are genuine issues of material fact as to whether Harry's Dairy breached the contract, we do not reach the issues of whether Good provided proper notice of resale, whether the contract was an installment contract, or whether the district court's decision violated Idaho's public policy or Harry's Dairy's right to a jury trial—all of which were additional issues raised by Harry's Dairy. Additionally, we do not reach the issue of whether Harry's Dairy is entitled to damages for Good's alleged breach of contract. Given our resolution

of the other issues in this case, we reverse the district court's dismissal of Harry's Dairy's breach of contract claim. Harry's Dairy may raise this claim, including its request for damages, on remand.

**E. The award of attorney fees and prejudgment interest is reversed.**

Because we reverse the decision of the district court to award summary judgment, we also reverse its award of costs, attorney fees, and prejudgment interest. The issues of costs, attorney fees, and prejudgment interest should be re-determined once the proceedings on remand are completed.

Each party requests attorney fees on appeal. Because the prevailing party is yet to be determined, we decline to award attorney fees on appeal. *Portfolio Recovery Assocs., LLC. v. MacDonald*, 162 Idaho 228, 236, 395 P.3d 1261, 1269 (2017); *Nettleton*, 163 Idaho at 75, 408 P.3d at 73. On remand, the district court may award the prevailing party attorney fees incurred in this appeal. *Id.*

## IV. CONCLUSION

We reverse the decision of the district court to grant summary judgment on Good's breach of contract claim and Harry's Dairy's breach of the implied warranty of merchantability claim, as well as its dismissal of Harry's Dairy's breach of contract claim. As a result, we also vacate the judgment on the jury verdict and the district court's award of attorney fees and costs. The case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to Harry's Dairy.


Justices BEVAN, STEGNER, and MOELLER CONCUR.