# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49529

| | | |
|---|---|---|
| In the Matter of: John Doe II, | ) | |
| A Child Under Eighteen (18) Years of Age. | ) | |
| ------------------------------------------------------------ | ) | |
| JANE DOE I and JOHN DOE I, | ) | |
| | ) | **Boise, June 2022 Term** |
|    Petitioners-Respondents, | ) | |
| | ) | **Opinion Filed: September 19, 2022** |
| v. | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| JOHN DOE II (2022-06), | ) | |
| | ) | |
|    Respondent-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Kent Gauchay, Magistrate Judge.

The decision of the magistrate court is <u>vacated</u> and the case is <u>remanded</u> for further proceedings.

Erika Lessing, PLLC, Idaho Falls, for Appellant. Erika Lessing argued.

Murray Ziel & Johnston, PLLC, Idaho Falls, for Respondents. Alan Johnston argued.

_____

BRODY, Justice.

In this appeal, we consider the due process rights of an unwed biological father who had established a relationship with his two-month-old child through frequent visits before the child's maternal grandfather filed a petition to adopt the child. Under Idaho Code sections 16-1504 and 16-1513, the magistrate court determined that the grandfather's filing of the adoption petition permanently and irrevocably barred the father from establishing paternity or objecting to the adoption. We vacate the decision of the magistrate court because the father's relationship with his child may have been sufficient to confer parental rights protected by the due process provisions of the Fourteenth Amendment of the United States Constitution and the statutes relied upon in the magistrate court's decision unconstitutionally risk termination of these rights without due process.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe I (Mother) and John Doe (Father) began dating in 2019. Mother became pregnant in June or July 2020 while they were living together in Pocatello, Idaho. Father was aware of the pregnancy. The two broke up in August 2020, and Mother moved in with her parents in Ammon, Idaho. Mother gave birth to John Doe II (Baby Doe) in late February 2021.

Mother stated in an affidavit that she did not want Father involved in Baby Doe's life as long as he drank alcohol and used marijuana. However, Mother allowed Father to attend some prenatal appointments, including one after the couple had broken up at which Baby Doe's gender was revealed. Father was not present when Baby Doe was born, but Mother informed Father of the birth and told Father that he could visit Baby Doe once she was home from the hospital. Father first visited Baby Doe on March 2, 2021. On twelve occasions over the next eight weeks, Father drove from Pocatello to Ammon, about an hour's drive, to visit with and hold Baby Doe. Each visit lasted about an hour.

On April 5, 2021, Mother and her father ("Grandfather") filed an adoption petition requesting that Grandfather be declared a legal parent of Baby Doe. Mother did not seek to relinquish her own parental rights; thus, if the petition were granted, Baby Doe's two legal parents would be Grandfather and Mother. Mother and Grandfather did not name Father as a party interested in the adoption proceeding and he was not served with notice of the petition. Unaware of the adoption proceedings, Father filed a petition to establish paternity on April 23, 2021, and registered notice of his paternity action with the Idaho Department of Health and Welfare (IDHW) four days later. Shortly after Mother became aware of Father's paternity action, she stopped allowing Father to visit Baby Doe and she did not tell him about the adoption proceeding.

After Mother's counsel informed Father's counsel of the pending adoption petition, Father sought an emergency stay of the adoption proceeding in early May. The stay was granted, and the adoption case and the paternity case were consolidated.

Mother moved to dismiss the paternity petition in late May, arguing that under Idaho Code section 16-1513, Father was barred from maintaining a paternity action by the filing of the adoption petition. Father responded with a motion to strike Mother's motion to dismiss for purported procedural irregularities. At a hearing, the magistrate court declined to consider either party's motion, explaining that it preferred to order genetic testing to determine whether further

2

proceedings were warranted. In early August, a DNA test confirmed that Father is the biological parent of Baby Doe.

In late August, Father responded to the substance of Mother's motion to dismiss his paternity action. He argued the filing of the adoption petition did not preempt him from establishing paternity because the petition contained certain errors and was filed in bad faith. This echoed arguments Father had made in a separate motion to dismiss the adoption petition, filed one day earlier. Mother responded to both motions by acknowledging the petition contained minor errors but disputing that those errors had any effect on the petition's validity. In the event the magistrate court disagreed, however, she sought leave to amend and attached an amended petition to her response.

The magistrate court held a hearing in early September, after which it ordered the parties to submit supplemental briefing, addressing: the applicability of various equitable doctrines to the facts of the case, and the constitutionality of Idaho's adoption and paternity statutes. In addition, the magistrate court sought briefing on several other topics.

The magistrate court issued a decision in late December 2021 dismissing Father's paternity petition pursuant to Idaho Code sections 16-1504 and 16-1513. The magistrate court held it was irrelevant under the adoption statutes whether Father wanted to or was prepared to fulfill parental responsibilities. It also held it was irrelevant that the adoption of Baby Doe by Grandfather was an action that "on its face appears to be taken simply as a means to eliminate [Father] from being part of the child's life because [Mother] does not agree with [Father]'s lifestyle choices." Instead, because Father was not married to Mother when Baby Doe was born, the only relevant fact was whether Father had (1) filed a paternity action, (2) filed a notice of that action with IDHW, and (3) paid a reasonable portion of certain costs incurred by Mother, all before the adoption petition was filed. Because Father had not, the magistrate court held he was forever barred from establishing paternity, and dismissed his petition, with prejudice.

The magistrate court entered judgment in January 2022, which was amended in mid-February. Shortly thereafter, it granted a permissive appeal to this Court under Idaho Appellate Rule 12.1 and stayed the adoption proceedings pending our review. Father timely appealed.

3

## II.    STANDARD OF REVIEW

This case turns on the nature of Father's parental rights under the Fourteenth Amendment of the United States Constitution. We freely review constitutional questions. *Nye v. Katsilometes*, 165 Idaho 455, 458, 447 P.3d 903, 906 (2019).

## III.    ANALYSIS

Father attacks the decision of the magistrate court in three ways. First, he maintains that the adoption petition cannot preempt his paternity petition because it is defective for various reasons. Second, even if the petition is valid, he argues that several Idaho statutes, including Idaho Code sections 16-1504 and 16-1513, are unconstitutional on equal protection grounds. And third, he alleges several violations of his due process rights amount to reversible error. We address each of these arguments in turn.

### A.  Father's argument that the adoption petition is defective is unavailing.

In his first argument, Father contends that the adoption petition contained various defects on its face that cannot be corrected by amendment; therefore, it is a nullity and cannot preempt his petition for paternity. This argument is unpersuasive. Some of the defects alleged by Father are not defects at all, such as written consents to the adoption having not been filed simultaneously with the adoption petition. *See* I.C. § 16-1506 (imposing no such requirement). Others are obvious scrivener's errors that, in context of the petition as a whole, do not create confusion about any material issue and do not render the petition defective. *See Gifford v. W. Ada Joint Sch. Dist. #2*, 169 Idaho 577, 583, 498 P.3d 1206, 1212 (2021) (holding that courts will "make every intendment to sustain a complaint that is defective" so long as it is sufficiently clear).

The only potentially material error in the petition is its failure to list Grandfather's wife as a person whose consent to the adoption was required. *See* I.C. §§ 16-1503, 16-1506(1). However, this omission was corrected in the amended petition submitted by Mother. And although the magistrate court did not rule on Mother's motion to amend the petition, we are unpersuaded by Father's arguments that leave to amend cannot be granted. Therefore, the magistrate court did not err by failing to dismiss the adoption petition for any of the reasons just discussed.

### B.  We reject Father's equal protection argument because it is inconsistent with controlling precedent of the Supreme Court of the United States.

Father asserts that seven statutes—Idaho Code sections 7-1106, 7-1111, 16-1501A, 16-1504, 16-1505, 16-1513, and 39-255—are all unconstitutional on equal protection grounds

4

because they allow unwed mothers to make certain decisions regarding their babies immediately upon birth, but unwed fathers do not automatically have similar rights.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). However, the Equal Protection Clause does not require "things which are different in fact . . . to be treated in law as though they were the same[.]" *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966)). According to Father, he and Mother are similarly situated because they are each a biological parent of Baby Doe and, therefore, equal protection demands that they automatically be afforded the same parental rights.

We disagree, but we must take a quick detour to explain. Though we are currently concerned with Father's equal protection argument under the Fourteenth Amendment, and we will soon turn to his *procedural* due process argument, we must briefly discuss *substantive* due process. In addition to guaranteeing equal protection and procedural due process, the Fourteenth Amendment "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). The right of parents to make decisions regarding the care, custody, and control of their children is one such fundamental right. *Id.*

For purposes of his equal protection argument, Father asserts that he and Mother are similarly situated for one reason alone—they share an equal genetic connection to Baby Doe. However, as a matter of substantive due process and controlling precedent of the Supreme Court of the United States, unwed fathers do not have parental rights equivalent to those of unwed mothers by virtue of biology alone. Instead, a father must establish something more to accrue full parental rights. He must establish a relationship with his child.

The Supreme Court of the United States developed its jurisprudence regarding the parental rights of unwed fathers—i.e., fathers whose legal parentage has not been established through the common law marital presumption of paternity—in a series of cases decided in the 1970s and 80s. Four of those cases are relevant here: *Stanley v. Illinois*, 405 U.S. 645 (1972), *Quilloin v. Walcott*,

5

434 U.S. 246 (1978), *Caban v. Mohammed*, 441 U.S. 380 (1979), and *Lehr v. Robertson*, 463 U.S. 248 (1983). Each of these involved a statute treating unwed mothers more favorably than unwed fathers. In *Stanley*, a statute provided that an unwed father's children would become wards of the state upon the death of the mother, regardless of a father's desire to raise the children or his fitness as a parent. 405 U.S. at 646. In both *Quilloin* and *Caban*, statutes provided that an unwed mother's consent was necessary for the adoption of her child, but an unwed father's consent was not. *Quilloin*, 434 U.S. at 248–49; *Caban*, 441 U.S. at 385–86. And in *Lehr*, a statute provided that an unwed father's consent to adoption was necessary only if he took certain affirmative steps to assert paternity before an adoption proceeding had commenced. 463 U.S. at 266.

In two of these cases, the Court held the fathers' constitutional rights were violated; in the other two, it held that they were not. The key difference between them was the nature of the relationships the fathers had formed with their children. As the Court explained in *Lehr,* where a relationship is established between father and child that "demonstrates a full commitment to the responsibilities of parenthood" the Constitution protects that relationship. 463 U.S. at 261. "But the mere existence of a biological link does not merit equivalent constitutional protection." *Id.* Because the fathers in *Stanley* and *Caban* had each lived with and supported their children for a considerable time, they had relationships entitling them to full parental rights. *Stanley*, 405 U.S at 650 n.4.; *Caban*, 441 U.S. at 383

By contrast, while the unwed biological father in *Quilloin* had visited his child, he "never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child." *Quilloin*, 434 U.S. at 255–56. Furthermore, he never sought actual or legal custody of his child. *Id.* Indeed, when the child's stepfather petitioned to adopt him as an 11-year-old, the father attempted to block the adoption—but still merely sought a right to visitation. *Id*. Because the unwed father's relationship with his child did not demonstrate any significant commitment to caring for the child, the Court held he was not entitled to the same parental rights as the child's mother. *See id*. Finally, in *Lehr*, the biological father had attempted to have contact with his child but was prevented from doing so by the mother. *See* 463 U.S. at 269 (White, J. dissenting) (describing the father's efforts to find his daughter after the mother fled with her as a newborn and concealed their location for years). As such, he had no relationship with his child which the Constitution could protect. *See Lehr*, 463 at 267–68.

Father asks us to cast aside the "biology plus relationship" rule established by the Supreme Court's unwed fathers' cases and hold that parental rights may be established through a genetic connection alone. Father contends the Supreme Court's jurisprudence is discriminatory against men because it establishes a rule "as stale and incorrect as the 'separate but equal' doctrine" of *Plessy v. Ferguson*, 163 U.S. 537 (1896). To be sure, unwed mothers and fathers do have different rights at the time their children are born under *Lehr* and its predecessor cases. Though never expressly stated, the Supreme Court clearly presumed that the mothers in these cases possessed parental rights by virtue of their motherhood, yet the fathers did not. Because Father contends it is fundamentally unfair to require more of unwed fathers than unwed mothers before parental rights are acquired, he posits that parental rights must be conferred through biology alone.

Father's argument is misplaced. Even if we were to disagree with the Supreme Court's unwed fathers' jurisprudence, we cannot simply cast it aside. The decisions in *Lehr* and its predecessor cases are binding precedent interpreting the United States Constitution, and Father has presented no argument that his rights under the Idaho Constitution must be interpreted differently. In any event, Father is incorrect that unwed mothers and fathers acquire parental rights on fundamentally unequal terms under the biology plus relationship rule. Father's argument ignores that it is the mother who carries the child. She necessarily establishes a relationship with her child through gestation and giving birth that is qualitatively different from any relationship a father can form until birth. Inasmuch as the biology plus relationship rule acknowledges this reality, it is not invidiously discriminatory. Furthermore, adopting Father's "biology alone" alternative would have far-reaching and disruptive consequences well beyond the adoption context, including for families where children are conceived with the help of sperm donors or surrogates.

As we discuss below, Father may have acquired parental rights through his relationship with Baby Doe. However, he is incorrect that he and Mother had equivalent parental rights at birth by virtue of biology alone. Because Father's sweeping equal protection argument rests on this premise, it is fundamentally flawed.

**C. Idaho Code sections 16-1504(3)(b) and 16-1513(4) are unconstitutional to the extent they deny due process to unwed fathers who have formed meaningful relationships with their children before an adoption petition is filed.**

Lastly, Father alleges that his due process rights were violated by the magistrate court's decision to dismiss his paternity petition pursuant to Idaho Code section 16-1513 and to allow the

7

adoption to move forward without his consent pursuant to Idaho Code section 16-1504 (pending this appeal).

Idaho Code section 16-1504 sets out the persons whose consent is required for the adoption of a child. Where a child is born outside of marriage, the consent of the child's mother is required. I.C. § 16-1504(1)(c). However, consent of the child's father is not necessary, unless he has "strictly complied" with several requirements. I.C. § 16-1504(3). Relevant here, an unwed father of a child less than six months of age must do three things before his consent to an adoption is required: he must (1) file a suit for paternity of the child, (2) file notice of that suit with IDHW, and (3) have already paid a reasonable portion of pregnancy and birth costs according to his means, if he was aware of the pregnancy and not prevented from paying such costs by the mother or an agency having custody of the child. *Id.* Moreover, he must meet all three requirements before any petition to adopt the child is filed.

Similarly, Idaho Code section 16-1513 provides that, unless an unwed father files both a paternity action and notice of that action with IDHW before the filing of an adoption petition, he has "waived and surrendered any right in relation to the child and of any notice to proceedings for adoption of the child . . . ." I.C. § 16-1513(4). Furthermore, by not doing so "he shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child" and is deemed to have "abandon[ed]" his child and "irrevocabl[y] implied consent in any adoption or termination proceeding." *Id.*

Procedural due process is a doctrine concerned with preventing the arbitrary deprivation of legally protected interests:

> The Fourteenth Amendment of the U.S. Constitution guarantees procedural due process of law. The minimal requirements of procedural due process relate to notice and hearing in the deprivation of a significant life, liberty, or property interest. A procedural due process inquiry is focused on determining whether the procedure employed is fair. Due process is not a rigid doctrine; rather, it calls for such procedural protections as are warranted by a particular situation.

*Van Hook v. State*, 170 Idaho 84, ___, 506 P.3d 887, 896 (2022) (quoting *Telford v. Nye*, 154 Idaho 606, 611, 301 P.3d 264, 269 (2013) (internal citations and quotation marks omitted). Father alleges his procedural due process rights were violated in four ways: (1) IDHW inadequately communicated what is required of unwed fathers to preserve their rights and the statutes pertaining to unwed fathers are "confusing," (2) Idaho Code section 16-1513(4) does not allow a reasonable amount of time for an unwed father to protect his rights, (3) the adoption statutes impermissibly

deny pre-deprivation notice to unwed fathers, and (4) the statutes allow unwed fathers' rights to be denied without a reasoned determination.

In evaluating Father's due process arguments, it is important that we distinguish between "facial" and "as applied" constitutional challenges. *See Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 870, 154 P.3d 433, 441 (2007) (citing *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003)). In a facial challenge, "the party must demonstrate that the law is unconstitutional in all of its applications. In other words, 'the challenger must establish that no set of circumstances exists under which the law would be valid.'" *Id.* (internal citation and brackets omitted). In an "as applied" challenge, the party is required to show only that the statute operated to violate his or her rights under the specific circumstances of the case. *Id.* As we will explain, Father's due process arguments each fail as facial challenges. However, under the circumstances of this case, we hold that Idaho Code sections 16-1504(3)(b) and 16-1513(4) are unconstitutional as applied.

1. Father's due process rights were not violated by IDHW's publication of "incomplete" materials, the "confusing" statutory scheme, or a lack of time to protect his interests.

In his first due process argument, Father contends that the materials produced by IDHW to explain what unwed fathers must do to protect their interests are "incomplete and misleading," and that the adoption statutes themselves are "confusing." To the extent IDHW's materials might be flawed, Father has not argued (nor alleged any facts to support) that *he* was misled or confused by them. Likewise, though the statutory scheme is somewhat complex and might be confusing to some, Father does not assert that *he* was confused about what was required, nor does he raise a cogent argument that the statutes are conflicting or unconstitutionally vague. *Cf. State v. Cook*, 165 Idaho 305, 309, 444 P.3d 877, 881 (2019) (discussing vagueness doctrine in the context of criminal law).

In his second argument, Father asserts that "the period available to pursue the paternity action and file [notice with IDHW] may be perhaps as short as one day," if an adoption petition is filed promptly by an unwed mother. Therefore, he argues that section 16-1513(4) is unconstitutional because it does not provide unwed fathers with a "fair and meaningful amount of time" to protect their interests.

This argument ignores that an unwed father is permitted to file suit for paternity and file notice of that suit with IDHW *before* his child is born. I.C. § 7-1107(1) ("[A] proceeding to

9

establish paternity of the child under the provisions of this chapter may be instituted either before or after the birth of the child . . . ."); I.C. § 16-1513(2) ("The notice of the filing of paternity proceedings may be filed [with IDHW] prior to the birth of the child . . . ."). By contrast, the actions which cut off the opportunity to establish paternity under section 16-1513(4) (termination of the mother's parental rights, execution of a consent to the same, or the filing of an adoption petition) cannot be completed until after the birth of the child. *See generally*, I.C. §§ 16-1501–16-1515, 16-2001–16-2015. Here, Father was aware of Mother's pregnancy from its early stages and, therefore, had several months to comply with the requirements of the statutes before Mother had an opportunity to file an adoption petition. Additionally, he had seven weeks to act after Baby Doe was born. This is ample time to have complied with the requirements of the adoption statutes.

Thus, in his first two arguments, Father has failed to demonstrate that he suffered a denial of due process (or any other prejudice) under his own circumstances, much less that the statutes are unconstitutional for the reasons asserted in all circumstances. Therefore, these arguments are without merit, both facially and as applied.

2. Father's procedural due process rights were violated because Idaho Code sections 16-1504(3)(b) and 16-1513(4) precluded the magistrate court from considering whether Father had acquired parental rights through his relationship with Baby Doe.

In his third and fourth arguments, Father contends that the adoption statutes impermissibly deny unwed fathers notice of adoptions involving their children and allow for the termination of parental rights without a reasoned determination. Mother responds that this case is "almost identical to *Lehr*," and because the Supreme Court did not find a due process violation in that case, we must conclude the same here.

The first step in analyzing a procedural due process argument is to determine "the precise nature of the private interest that is threatened by the State. Only after that interest has been identified can we properly evaluate the adequacy of the State's process." *Lehr*, 463 U.S. at 256 (citation omitted). In *Lehr*, the Court began its analysis of the interest at stake by looking to *Stanley*, *Quilloin*, and *Caban*. *Id.* at 256–63. It concluded from these cases that parental rights protected by the Constitution do not arise from a genetic link alone but require a relationship. Because, as noted above, the unwed father in *Lehr* never had a relationship with his child, the Court did not characterize the interest at stake as the unwed father's *parental rights*. *See id.* at 256–63, 269. Instead, the interest at stake was the father's "inchoate" *opportunity interest* in establishing parental rights. *Id.* at 263–65.

10

Framed this way, the Court held that the unwed father had not been denied due process. Under a New York statute, he could have "guaranteed that he would receive notice of any proceedings to adopt" his child if he had merely "mail[ed] a postcard" to a putative father registry maintained by the state, but he failed to do so. *Lehr*, 463 U.S. at 263–64. The Court opined that "[i]f this scheme were likely to omit many responsible fathers, and if qualification for notice were beyond the control of an interested putative father, it might be thought procedurally inadequate." *Id.* However, the Court held that the father's "inchoate interest in establishing a relationship" with his child had been adequately protected under New York's statutory scheme. *Id.* at 265.

We must likewise begin by characterizing the interest Father has at stake. Mother argues the only interest at stake is Father's inchoate opportunity interest in being a parent. However, Father does not argue he has been unconstitutionally denied an inchoate interest in establishing parental rights. He argues that he has been denied due process in the deprivation of fundamental parental rights that he already possessed. Although we disagree with Father's argument that he has parental rights on the basis of his biological connection to Baby Doe alone, we agree, under the facts of this case, that the interest at stake involves his parental rights.

This is so because the facts of this case are not, as Mother argues, "almost identical" to the facts in *Lehr*. The unwed father in *Lehr* did not have any appreciable contact with his child, while her Father had significant contact with Baby Doe. Further, Lehr waited two years to assert his rights while in this case Father brought his paternity action within two months of Baby Doe's birth, while Mother's petition was still pending. From Baby Doe's birth until the filing of the adoption petition, Father paid numerous visits to Baby Doe where he spent time with, held, and interacted with his child. Therefore, he may have acquired parental rights under the biology plus relationship rule and we must consider whether he was afforded the process he was due in protecting those rights. We hold he was not.

The nature of the relationship between an unwed biological father and his child is not a factor under Idaho Code sections 16-1504(3)(b) and 16-1513(4) when an adoption involves a child younger than six months old. All that matters is whether the unwed father has strictly complied with the requirements set out in the statutes. If he has not, the statutes establish an irrebuttable presumption that he has abandoned his child and "irrevocabl[y] implied consent in any adoption or termination proceeding." *Id.* We are aware of no other instance where a person alleging impairment of a fundamental right may be denied an opportunity to prove his rights have been

11

impaired based on such a presumption. Under this regime, a biological father could be the sole caregiver for his child for five months—demonstrating his commitment to parenthood and establishing his parental rights under the Constitution—yet, under the statutes, he would be treated as no more than a stranger to his child. Plainly, this would be unconstitutional.

Of course, Father was not the sole caregiver for Baby Doe for any amount of time and it is not plain from the record before us that a relationship existed of a sufficient nature to confer full parental rights. However, the undisputed facts show that Father had significant personal contact with his child. Although this relationship may have been limited in time and scope, it provided Father with at least a colorable claim to argue that his biological connection had ripened into a bond of parental affection. Father's situation is not equivalent to a biological father who never meets or holds or spends appreciable time with his child. It has also provided Father with an opportunity to demonstrate his full commitment to parental responsibility through his conduct in that relationship.

Procedural due process "calls for such procedural protections as are warranted by a particular situation." *Van Hook*, 170 Idaho at ___, 506 P.3d at 896 (quoting *Telford v. Nye*, 154 Idaho 606, 611, 301 P.3d 264, 269 (2013)). Here, there is a genuine possibility that Father has acquired parental rights protected by the Fourteenth Amendment under the biology plus relationship rule. Further, he has expressed a desire to be a parent to Baby Doe, has averred that he is prepared to do so, and has brought this legal proceeding to establish his paternal rights. In this situation, due process demands he have an opportunity to demonstrate that this is the case. To hold otherwise on the basis of an irrebuttable presumption would "needlessly risk[] running roughshod over the important interests of both parent and child." *Stanley*, 405 U.S. at 656–57 (holding that "procedure by presumption" was antithetical to the unwed father's due process rights).

Therefore, we remand the case for the magistrate court to determine whether Father's relationship with Baby Doe demonstrated a full commitment to parenthood. In considering whether Father's relationship with Baby Doe meets this standard, the magistrate court should consider all relevant facts bearing on the issue, including the opportunities he seized to care and provide for Baby Doe relative to the opportunities he was allowed. Further, the magistrate court must hold a hearing where the parties may submit additional evidence, if they desire. If Father is able to make the necessary showing, then he possesses fundamental parental rights under the

United States Constitution that may not be summarily terminated by Idaho Code sections 16-1504(3)(b) and 16-1513(4).

Finally, we pause to emphasize two points about the narrowness of our holding. First, we note that our holding is limited to cases involving adoptions of children younger than six months old under Idaho Code section 16-1504(3)(b). Subsection (3)(a) of section 16-1504 addresses the adoption of children older than six months of age. And unlike subsection (3)(b), which allows for no consideration of the actual relationship between an unwed father and his child, subsection (3)(a) provides that an unwed father's consent to adoption is required if he has "developed a substantial relationship with the child, taken some measure of responsibility for the child and the child's future, and demonstrated a full commitment to the responsibilities of parenthood" by financially supporting the child as he is able. I.C. § 16-1504(3)(a). While we have no occasion today to consider whether Idaho's adoption statutes are constitutional regarding adoptions of children older than six months of age, we note that subsections (3)(a) and (3)(b) are substantially different in what they require of unwed fathers.

Second, our holding today applies only where an unwed father of a child younger than six months old has established an actual relationship with his child. Where a father has declined to establish a relationship, or has otherwise been unable to do so, *Lehr* is clear that his interests are inchoate and may be lost if he fails to timely act. 463 U.S. at 265. That said, the requirements imposed on unwed fathers to protect their opportunity interests under Idaho's statutes are substantially more onerous than in the scheme approved of by the Supreme Court in *Lehr*.

Before the 1950s, the parental rights of unwed fathers presented little moral or constitutional dilemma. Serena Mayeri, Foundling Fathers: *(Non-)marriage and Parental Rights in the Age of Equality*, 125 Yale L.J. 2292, 2297 (2016). Profound legal and social changes of the 1960s and 1970s, however, reshaped those rights. *Id.* (citing increased rates of nonmarital births, increased participation of women in the workforce, and climbing divorce rates). When *Stanley* was decided in 1972 many had presumed that unwed fathers did not have constitutionally protected parental rights at all. *See id.* at 2323. In response to their recognition, state legislatures began to establish putative father registries as a means to balance the rights of unwed fathers with the state's interest in stable adoptions. *See Lehr*, 463 U.S. at 263

Two years after *Lehr*, the Idaho legislature amended our adoption statutes to create such a registry. *See* 1985 Session Laws 106–08. Initially, unwed fathers in Idaho could, like the unwed

13

father in *Lehr*, protect their opportunity interests simply by mailing a form to IDHW. *Id.* The far more stringent requirements now imposed by Idaho Code section 16-1504(3) and 16-1513(4) were added by amendments to the adoption statutes in 2000 and 2013. *See* 2000 Idaho Sess. Laws 422–440; 2013 Idaho Sess. Laws 324–329. To all appearances, the amendments were intended to prevent situations like those in the highly publicized cases of "Baby Jessica" and "Baby Richard." *See* Senate Health and Welfare Committee Meeting Minutes (March 1, 2000, and March 2, 2000) (referencing these cases by name); Statement of Purpose, RS21769C2, 2013 H.B. 214 (2013) (describing a failed adoption as a "worst nightmare"). In both cases, children were removed as toddlers from the homes of their adoptive parents—the only parents the children had ever known—after an unwed father asserted his parental rights. *See In re Clausen*, 502 N.W.2d 649 (Mich. 1993) (Baby Jessica); *Petition of Kirchner*, 649 N.E.2d 324 (Ill. 1995), *abrogated by In re R.L.S.*, 844 N.E.2d 22 (2006) (Baby Richard).

Undoubtedly, the State has an interest in preventing such heart-rending situations. Mother has argued this justifies the strict requirements unwed fathers must satisfy to protect their inchoate rights. We do not decide today if that is so. Father's alleged deprivation of due process was grounded solely on the basis of his *asserted* parental rights through ongoing contact with the child. Because he did not argue he was denied due process in the protection of his opportunity interests, we have not addressed the question. Therefore, we express no opinion whether Idaho's scheme comports with due process for fathers who do not establish relationships with their children.

## D. Mother is not entitled to attorney fees on appeal.

Mother requests an award of attorney fees, citing cases where this Court has awarded fees under Idaho Code section 12-121. Under that statute, fees may only be awarded to a prevailing party. I.C. § 12-121. Here, Mother is not the prevailing party and, therefore, is not entitled to attorney fees.

Mother also seeks an award of attorney fees against Father's counsel as a sanction under Idaho Appellate Rule 11.2. Rule 11.2 provides that an attorney who signs a document represents that it is, "to the best of the signer's knowledge . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." I.A.R. 11.2(a). If a document has been signed in violation of this rule, we may "impose upon the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party" reasonable attorney fees incurred in responding to the offending document. *Id.*

14

Here, Mother contends that Father's opening brief was signed in violation of Rule 11.2 because it does not substantively discuss *Lehr.* According to Mother, *Lehr* is controlling authority adverse to Father's position, and his failure to cite it amounts to "dishonesty toward the tribunal," as well as evidence that his appeal was not in good faith.

We are unpersuaded. In setting out the biology plus relationship rule, *Lehr* is undoubtedly adverse to Father's argument that biology alone should confer parental rights. However, there is no indication that Father attempted to deceive the Court by failing to address the case because there was never any chance we would not have discovered it. *Lehr* was discussed in the magistrate court's order dismissing Father's petition, and it was foundational to Mother's arguments below and on appeal. As a matter of appellate advocacy, we agree that the better practice would have been for Father to have discussed notable adverse authority, such as *Lehr*, in his opening brief. However, given *Lehr's* conspicuous role in the proceedings below, and the factual dissimilarity to this case, his failure to do so does not appear to have been intentionally deceptive and, thus, does not amount to sanctionable conduct.

## IV.    CONCLUSION

As a matter of procedural due process, we hold that Idaho Code sections 16-1504(3)(b) and 16-1513(4) are unconstitutional as applied under the facts of this case. We vacate the decision of the magistrate court dismissing Father's petition to establish paternity and remand the case for further proceedings. On remand, the magistrate court is to hold a hearing where the parties may present evidence and argument regarding whether Father has demonstrated a full commitment to the responsibilities of parenthood.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN CONCUR.